ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* MATIATAS.

Opinion delivered January 2, 1911.

1. GARNISHMENT—PAYMENT UNDER MISTAKE AS DEFENSE.—Where a railway company was properly served with writs of garnishment, in which were given the correct names of defendants, to whom the garnishee was indebted, no subsequent payment of the money in the garnishee's hands belonging to such defendants would relieve it of liability, even though made to defendants under assumed names, if the garnishee's officers or agents in charge knew that the persons to whom the payments were made were the defendants. (Page 209.)

2. SAME—EFFECT OF PAYMENT TO DEFENDANT.—It was not error to instruct that a garnishee would not be released by payment to defendants under mistake as to their identity if the garnishee's authorized agent knew or had notice of such facts as put him upon inquiry as to their identity. (Page 210.)

Appeal from Pulaski Circuit Court; *F. Guy Fulk,* Judge; affirmed.

*S. H. West* and *Bridges, Wooldridge & Gantt,* for appellant.

1. Appellant would not be bound by the statement furnished by the section foreman to the plaintiff, and it was improperly admitted in evidence. His authority as agent must appear from the evidence. 27 Ill. App. *412; Id.* 572; 1 Greenleaf, Ev. (15 ed.) 173, note (a); 63 Ark. 87, 93; 78 Ark. 381-7; 58 Ark. 168, 179; 67 Ark. 147, 152. "Declarations or admissions of an agent not made at the time of the occurrence or transaction to which they relate, and not expressly authorized by his principal, are not competent evidence against his principal unless they are so immediately connected with the transaction in point of time and circumstance as in fact to constitute a part thereof." 3 Am. & Eng. Ann. Cases, 621; 13 *Id.* 859; 14 Ark. 86, 105-7; 68 Ark. 225; 49 Ark. 207.

2. Before appellant can be held liable as garnishee, it must have had actual knowledge that the parties to whom it was indebted were the same as those sued by the appellee. 14 Am. & Eng. Enc. of L. 844; 20 Cyc. 1046; 156 Mass. 1; Rood on Garnishment, § 266; Shinn on Att. & Gar., § 603; Waples on Att. & Gar. (2 ed.), § 927; 58 N. H. 89; 125 Mass. 560; 5 Col. App. 427.

*Manning & Emerson,* for appellee.

1. The section foreman's statement was properly admitted. The circumstances and appellant's own evidence show that it was the duty of this forman to keep a correct list of all the laborers under him, their names, hours of labor, etc. A wrong having been committed by appellant or its employees without fault or negligence on the part of appellee, the loss should fall upon appellant. 108 Pac. 595.

2. The question as to whether or not appellant had notice that the parties to whom it was indebted were the same as those sued by the appellee was submitted to the jury under proper instructions, and their finding is conclusive. 20 Cyc. 1126. Moreover, the knowledge of appellant's agent, the section foreman, will be imputed to it. 151 N. Y. 1; 45 N. E. 355; 36 L. R. A. 658; 112 N. Y. 637; 20 N. E. 566; 99 Ala. 379; 13 So. 112.

"Notice sufficient to put one on inquiry is notice of all that such inquiry would lead to." 99 Ala. 493; 12 So. 572; 19 L. R. A. 705; 16 R. I. 710; 19 Atl. 369.

McCULLOCH, C. J.    Appellant, St. Louis Southwestern Railway Company, employed J. Spiedognokis and nineteen other Greeks as section hands, and put them to work on a section at or near Roe, Arkansas, on the line of appellant's railroad. These men constituted what was called "Extra Gang No. 11," and were led by one of them named Tareas as interpreter, he being the only one that could speak English. They worked there for appellant during July and August, 1909. These men were furnished to appellant by O'Brien, a labor agent. They were indebted to appellee, Gabriel Matiatas, who instituted separate actions against each of them before a justice of the peace of Pulaski County, and sued out writs of garnishment to be served on appellant railway company.    Judgments were rendered in favor of appellee against said defendants, and also, on a trial of the issue made by the answer of the garnishee and the reply of the plaintiff, judgments were rendered against the garnishee for the amount of plaintiff's debt.    On appeal to the circuit court of Pulaski County all the cases were consolidated, and the trial resulted in judgment against appellant as garnishee for $533, the aggregate amount of appellee's claims against all of said defendants.

After the service of the writs of garnishment, but before trial and before an answer had been filed, appellant railway company, through its regular channels, paid for the labor of these men by checks, but the names were reported by the section foreman, with the exception of one of them, Tareas, different from the way they appeared in the writs of garnishment.    The defense of the garnishee is that the men were paid without knowledge of the identity of the parties named in the writs of garnishment.    There is testimony, however, tending to show that counsel for appellee, before the payments were made, called the attention of appellant's counsel to the fact that the garnishment was against the men who worked in Extra Gang No. 11 at Roe or Ulm, Arkansas.    The evidence also establishes the fact that these men were delivered to the railway company under the names set forth

in the writs of garnishment, and that their names so appeared on the time book of the section foreman who worked them.

The principal contention is that the court erred in permitting appellee to testify that the list of names in the writs of garnishment were copied from the time book by the section foreman in his hands and delivered to him. The contention is that it was not within the scope of the employment of the section foreman, Melton, to give out the list, and that he could not bind the company in doing that. We think, however, that the evidence was competent for the purpose of showing that these men actually worked for the railroad company under the names mentioned in the writs of garnishment. Appellee testified that the section foreman copied the names from his time book, and he produced before the jury the list of names which had been so copied. If these men actually worked for the railroad company under the names mentioned in the writs of garnishment, which the evidence tends to show was the fact, and those were their correct names, then the company would be responsible, even though the agent had reported the wrong names. It was within the scope of the section foreman's employment to report the time of the laborers in his gang; and if he reported the wrong names and thereby misled his principal, the latter must be the sufferer, and not the adverse party who has sued his debtors under their correct names and caused them to be identified in the writs of garnishment. For this reason, we think that the instructions given at the instance of appellee, and objected to by appellant, were correct.

For instance, objection is made to the second instruction, to the effect that if said defendants were in the employ of the railway company, and the company was indebted to them on and after the date of the service of the writs of garnishment, it would not be discharged by reason of payment to the defendants under different names, resulting from the section foreman, in making up his time books or pay rolls, erroneously spelling the names of the defendants, or from mistakes of some other officer or agent of the company in transcribing the names of the defendants. We think this instruction was correct, for, as before stated, if the appellee sued the right party under the proper name, and that party was working for the railway company under

that name, the garnishee was not exonerated by a payment made under a different name because of some error or omission by its own servants. When the writs were properly served on appellant, naming the defendants in the case, it was the duty of appellant to ascertain whether or not it was indebted to those parties, and it alone is responsible for mistakes made by its own servants.

Objection is also made to the third instruction, which in substance told the jury that if the garnishee was indebted to the defendants at the time of the service upon its agent of the writs of garnishment, no subsequent payment of the money in its hands belonging to defendants would relieve it of liability, even if made to the defendants under different names, if the section foreman or other officers or agents of the defendant in charge knew that the persons named in the writs were the defendants. This instruction, for the reasons already stated, is, we think, correct. Of course, the knowledge must have been that of some servant within the scope of his employment, but it was certainly within the scope the employment of the foreman to know and to report correctly the names of the laborers in his gang who were sued. Besides, the undisputed evidence shows that appellant received actual knowledge from the attorney for appellee, before the payments were made, that the writs were intended to reach the amounts due the members of Extra Gang No. 11.

Appellant requested the following instruction, which the court gave after modifying it by inserting after the word "knowledge," where it appeared, the words "or notice of such facts as put them on inquiry": "You are instructed that the paymaster of the railway company had the right to rely upon the correctness of the names shown upon the railway company's pay roll, and to pay same accordingly; and if you believe from the evidence in this case that when he received notice of the garnishment suits by the plaintiff against the defendants named in the writs that he examined the pay rolls of said railway company, and that there were no such names upon the railway company's pay rolls, and that the laborers shown upon the pay rolls to have worked in Extra Gang No. 11, under G. Melton as section foreman, during the months of August and September, 1909, were paid by

the railway company their wages due after service of the writs upon said railway company in the garnishment suits by plaintiff, then the railway company will not be liable to plaintiff as garnishee for any sum paid the men who worked in Extra Gang No. 11, unless you further believe from the evidence that the paymaster of said company or some authorized agent thereof had actual knowledge at the time of the payment of the wages due that the defendants mentioned in the garnishment writs served upon the railway company were the same parties paid by said railway company working in Extra Gang No. 11, as proved in this case. The burden of proof is upon the plaintiff to show that the railway company had actual knowledge that the men paid and those sued by plaintiff were the same persons, and that such railway company had such actual knowledge before the payment by it to the men shown on its pay rolls."

The effect of this modification was to tell the jury that the garnishee would not be released by the payment if its paymaster or other authorized agent had actual knowledge or notice of such facts as put them on inquiry as to the identity of the defendants. Learned counsel argue with much earnestness that this is not the law, and that there must be actual knowledge before the garnishee can be charged. We do not agree with them in this contention. As said by a learned textwriter on the subject: "Names are used for identification, and when the garnishee is not misled a misnomer will not affect the validity of the proceeding." Shinn on Attachment & Garnishment, § 603.

Now, even though the names of these Greeks were different in the writs of garnishment and in the pay rolls sent in to the paymaster of the company, yet if by any means the knowledge of their identity was brought home to the proper officers or agents of the company, or any knowledge of such facts which put them on inquiry, it was their duty to pursue that inquiry, or to withhold payment until they had reason to believe that they were not the same parties who were included in the writs of garnishment. The agents of the company, after receiving notice of the writs of garnishment, could not shut their eyes to means of identification which were brought to their attention. If they failed to pursue the inquiry open to them, they did so at their own peril, and the railway company would be liable.

Judgment affirmed.